**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CIVIL DIVISION**

**Case No. 23cv60756**

**BYRON HIRTZEL,**

　　　　**Plaintiff,**

　v.

**NATIONSTAR MORTGAGE, LLC**
**dba MR. COOPER,**

　　　　**Defendant.**
_____/

### COMPLAINT FOR DAMAGES WITH JURY DEMAND

Plaintiff BYRON HIRTZEL, through counsel, states as follows for his Complaint against Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar"):

### PARTIES, JURISDICTION, AND VENUE

1.　　Borrower, Mr. Byron Hirtzel ("Plaintiff" or " Mr. Hirtzel"), is the owner of real property and improvements located at and commonly known as  233 SW 3rd Street, Pompano Beach, Fl 33060 (the "Home").

2.　　 Mr. Hirtzel maintains the Home as his primary, principal residence, and has so maintained for all times relevant to the allegations of this Complaint.

3.　　At all relevant times, Nationstar Mortgage, LLC dba Mr. Cooper ("Defendant" or "Nationstar") was the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Federal National Mortgage Association"Fannie Mae" ("FNMA") is the current owner of theLloan.

5.      Mr. Hirtzel purchased the home in 2007 from Windsor Capital Mortgage Corp. A copy of the Loan documents are attached hereto as ***Composite Exhibit 1***.

6.      Mr. Hirtzel entered into a Loan Modification Agreement ("LMA") with Nationstar with an effective date of April 1, 2020. A copy of the 2020 LMA is attached as ***Exhibit 2***.

7.      Included with the LMA was an "AGREEMENT TO MAINTAIN ESCROW ACCOUNT". *See **Exhibit 2***.

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

9.      This Court has supplemental jurisdiction to hear any and all state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

10.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF RESPA CLAIMS

11.     This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

12.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376

(2010).

13.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

14.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

15.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

16.     Mr. Hirtzel asserts claims for relief against Nationstar for violations of the specific rules under Regulation X, as set forth, *infra*.

17.     Mr. Hirtzel has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

**INTRODUCTION AS TO THE REASON FOR FILING THIS CASE**

18.     Nationstar failed to maintain homeowners insurance on the Property despite

---

[1]"The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans." 78 Fed. Reg. 10696, 10739.

having a fiduciary and contractual duty to do so because as explained further below, Nationstar created an escrow account when it modified the Loan in 2020. Nationstar accepted funds for insurance and taxes, but failed to make the payments for the insurance until after Mr. Hirtzel experienced a loss at the property. Despite multiple attempts by Mr. Hirtzel to notify Nationstar of this error and violation, Nationstar failed to provide insurance for the relevant time period. Mr Hirtzel continues to live in a state of disrepair which makes ambulating in his wheelchair extremely burdensome and difficult due to the lapse of coverage caused by Nationstar.

19.     In April of 2020, Mr. Hirtzel modified his Loan with Nationstar[2].

20.     The Loan Modification Agreement ("LMA") has an effective date of April 1, 2020 and reflects an initial monthly principal and interest payment amount of $656.90.

21.     Prior to the LMA, Mr. Hirtzel's Loan was not escrowed, meaning he paid his insurance and taxes separately. Mr. Hirtzel secured his property with insurance from Anchor through Gateway prior to Nationstar modifying his loan and creating an escrow account.

22.     Mr. Hirtzel was up to date with his insurance and tax payments when he executed the LMA.

23.     As a part of the application process, Mr. Hirtzel provided insurance and tax records for the Home to Nationstar as required. Additionally, Nationstar was listed as the

---

[2] In the fall 2019 Mr. Hirtzel missed two mortgage payments when he was injured and missed work due to his injury. According to the payment history produced by Nationstar, Mr. Hirtzel was allegedly one payment behind prior to his missing the two payments in the fall of 2019; however, it appears Nationstar or a predecessor misapplied Mr. Hirtzel's payments and erroneously designated the account delinquent. When Mr. Hirtzel attempted to make a payment in November of 2019, Nationstar returned his payment advising he was being sent to foreclosure. Mr. Hirtzel's Loan terms provide for acceleration of the Loan when no payment has been made after 120 days. Nationstar erroneously advised Mr. Hirtzel that his only option was to modify his Loan. Mr. Hirtzel's Loan was erroneously designated as delinquent. Nationstar should have accepted his payment and allowed Mr. Hirtzel an opportunity to resolve the two missed payments and become current on the Loan. Mr. Hirtzel's Loan terms provide for acceleration of the Loan when no payment has been made after 120 days.

additional insured and lien holder on the insurance policy prior to the LMA. Nationstar received notices regarding the payment deadlines and procedures and had ample notice regarding when, how and where to make payments on the policy in question as explained further below.

24.     Mr. Hirtzel made the monthly mortgage payments according to the terms of the LMA.

25.     In October of 2020, Mr. Hirtzel experienced a loss at the Home. Specifically, there was a leak in the first week of October that caused flooding throughout his Home..

26.     Mr. Hirtzel immediately contacted his insurance agent at Gateway Acentria ("Gateway") to report the loss; he was greatly distressed to learn that his insurance had lapsed.

27.     He immediately contacted Nationstar regarding the alleged lapse of coverage.

28.     Nationstar falsely assured Mr. Hirtzel that he had insurance until October 15, 2020.[3]

29.     When Mr. Hirtzel circled back to his insurance agent to inform them of Nationstar's assurances, Mr. Hirtzel's insurance agent, Gateway, advised that his hazard and windstorm policy had been canceled due to nonpayment by Nationstar.

30.     Mr. Hirtzel went back and forth between Nationstar and Gateway company attempting to resolve the discrepancy.

31.     Out of complete desperation, Mr. Hirtzel sought and retained legal counsel to represent him in this matter.

32.     During this same time frame, the global pandemic and hospitalizations of Mr. Hirtzel made the error resolution process more difficult for Mr. Hirtzel. Nationstar's failure to

---

[3] As explained more fully below, after October 15, 2020, Nationstar deceptively sent notices to Mr. Hirtzel advised him that he failed to provide proof of coverage, knowing full well that coverage had lapsed due to Nationstar's nonpayment of the same despite maintaining his escrow account for this purpose.

provide accurate and sufficient responses exacerbated this difficulty. The distress caused by Nationstar's continued refusal to resolve the errors also exacerbated Mr. Hirtzel's medical condition and recovery process.

33.     Mr. Hirtzel attempted to resolve the insurance coverage issue through the error resolution process, as more fully detailed below, the only clarification Mr. Hirtzel received from Nationstar was in February of 2022 when it sent a letter in response to his second Notice of Error alleging that his coverage was changed from Anchor to Homeowners Choice on April 1, 2020 due to underwriting and was paid in full until October 15, 2020.[4]

34.     Nationstar failed to provide supporting documents, such as the alleged notice of cancellation from Anchor due to underwriting or the replacement Homeowners Choice policy, or a copy of any other insurance policy despite multiple requests from Mr. Hirtzel for these items and others needed to resolve the mortgage servicing errors committed by Nationstar.

35.     Mr. Hirtzel was forced to spend many hours with the assistance of counsel, attempting to obtain proof of coverage for the period of loss by calling, mailing and emailing insurance companies. Finally, in October of 2022, he learned that the Homeowners Choice policy was immediately canceled due to non-payment by Nationstar. He was able to obtain documentation from Gateway evidencing that Nationstar had been provided notice of this cancellation on October 7, 2020 via email from Gateway. See a redacted copy of the emails between Gateway and Nationstar attached as *Exhibit 3*.

36.     Nationstar failed to pay for any coverage from April 1, 2020 to October 15, 2020 ("Lapsed Coverage Period") despite having a fiduciary and contractual duty to do so.

---

[4] However, Nationstar produced a Premium Statement from Nationstar's records for the relevant insurance policy with Anchor which reflected that the policy had not been paid in full and had a remaining balance owed of $972.20 in contradiction of Nationstar's claim that the policy was paid in full.

37.     To date, Mr. Hirtzel is forced to ambulate in a wheelchair in his home that does not have proper flooring. While Mr. Hirtzel paid for repairs of the leak to mitigate and prevent further damage from the loss; he has been unable to restore his home to its pre-loss condition without the insurance policy coverage.

### ATTEMPTED ERROR RESOLUTION PROCESS

38.     On July 20, 2021, due to the mortgage servicing errors by Nationstart, Mr. Hirtzel, with the assistance of counsel, sent a request for information and a notice of error to Nationstar at the address Nationstar designated for the receipt of notices of error and requests for information pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(b), respectively (the "Designated Address"), specifically:

   a.   A request for information pursuant to 12 C.F.R. § 1024.36 ("RFI #1"); and,

   b.   A notice of error pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) ("NOE#").

*See*, a copy of RFI #1 and NOE#1, attached as ***Composite Exhibit 4***;

39.     Through NOE #1, Mr. Hirtzel advised Nationstar that he incurred a loss due to an interior leak on or about October 3, 2020, that Nationstar erred in refusing to provide him with proof of coverage, and that Gateway advised that his insurance coverage lapsed during the time of loss due to Nationtar's erroneous nonpayment; he included a copy of the inspection report he obtained from a public adjuster.  See ***Composite Exhibit 4***.

40.     Due to the servicing errors and in an effort to assist with correcting the errors, Mr. Hirtzel requested through RFI #1 that Nationstar provide an itemized payoff and the following items:

a. An exact reproduction of the life of loan mortgage transactional history for this loan from the contract system of record from your electronic software program for this loan.

b. Copies of all Notice(s) of Transfer of Servicer for the above-referenced mortgage loan, if any. Specifically, when did Borrower's loan move to the regional office of the Servicer

c. Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan for the time period from the closing the the current date.

d. The identity, address, and other relevant contact information for the custodian of the collateral file containing the original collateral documents for the above-referenced mortgage loan, including, but not limited to the original note.

e. A detailed copy of your analyses of the escrow account of the mortgage from the time of closing to the present.

f. A copy of all insurance policies obtained by Servicer for the subject Property.

g. Call log and call notes/communication if not included in Request No. 1, above.

h. A copy of the HUD-1 statement, which was, or should have been generated at the closing of the above reference Mortgage Loan.

i. Copies of all correspondence whether sent via mail or electronically to Borrower since the closing  date.

j. A statement of any premiums and or fees assessed to the Borrowers' mortgage loan account for any insurance.

See ***Composite Exhibit 4***.

41. Nationstar received NOE#1/RFI#1 on July 29, 2021. A true and correct copy of the USPS mail receipt is attached hereto as ***Exhibit 5***.

42. Mr. Hirtzel did not receive a response to NOE #1 or RFI#1.

43. Because Nationstar failed to respond to NOE #1 or RFI #1, with the assistance of counsel Mr. Hirtzel sent a second Notice of Error pursuant to 12 C.F.R. § 1024.36 and Request for Information on November 30, 2021. A copy of RFI #2/ NOE #2 attached as ***Composite***

***Exhibit 6***.

44.     Nationstar received NOE#2/RFI#2 on December 10, 2021. A true and correct copy of the USPS mail receipt is attached hereto as ***Exhibit 7***.

45.     Through NOE #2, Mr. Hirtzel alleged that Nationstar committed errors in relation to the Loan by:

    a.  Failing to make payments front the escrow account in a timely manner as required by 12 C.F.R § 1024.34, which provides that "the servicer shall make payments from the escrow account in a timely manner, that is, on or before the deadline to avoid a penalty, as governed by the requirements in § 1024.17(k)";

    b.  Failing to respond to NOE#1

    c.  Failing to provide escrow balances and notices regarding the escrow account;

    d.  Failing to respond to RFI #1 including the request for a payoff statement; and,

    e.  Failingto provide periodic billing statements for the Loan.

See ***Exhibit 6***.

46.     Through RFI #2, Mr. Hirtzel again requested an itemized payoff and the following items:

    a.  An exact reproduction of the life of loan mortgage transactional history for this loan from the contract system of record from your electronic software program for this loan.

    b.  Copies of all Notice(s) of Transfer of Servicer for the above-referenced mortgage loan, if any. Specifically, when did Borrower's loan move to the regional office of the Servicer

    c.  Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan for the time period from the closing the the current date.

> d. The identity, address, and other relevant contact information for the custodian of the collateral file containing the original collateral documents for the above-referenced mortgage loan, including, but not limited to the original note.
>
> e. A detailed copy of your analyses of the escrow account of the mortgage from the time of closing to the present.
>
> f. A copy of all insurance policies obtained by Servicer for the subject Property.
>
> g. Call log and call notes/communication if not included in Request No. 1, above.
>
> h. A copy of the HUD-1 statement, which was, or should have been generated at the closing of the above referenced Mortgage Loan.
>
> i. Copies of all correspondence whether sent via mail or electronically to Borrower since the closing date.
>
> j. A statement of any premiums and or fees assessed to the Borrowers' mortgage loan account for any insurance.

See *Exhibit 6*.

47. Nationstar failed to timely respond to RFI #2 and NOE #2, but eventually sent an untimely and incomplete response that contained false allegations on or about February 15. 2022.

48. Specifically, Nationstar admitted that it received NOE #1 and RFI #1, but falsely alleged it had provided a prior response. Nationstar alleged that coverage had transferred to Homeowners Choice on April 1, 2020 due to underwriting issues with his prior insurer, Anchorage, and was paid in full until October 15, 2020.

49. Nationstar still failed to provide the insurance policies and the other documents requested by Mr. Hirtzel to assist him with resolving this issue such as call notes, escrow analyses, and customer service notes.

50. Accordingly, Mr. Hirtzel sent NOE#3/RFI#3 to address the errors committed by Nationstar by and through its untimely and improper response to NOE#2/RFI#2. Included with

NOE#3/RFI#3 was a notice of change of firm address for Mr. Hirtzel's counsel and an updated Third Party Authorization with the new address. A true and correct copy of NOE#3/RFI#3 is attached hereto as ***Composite Exhibit 8***.

51.     Through NOE#3/RFI#3, Mr. Hirtzel alleged that Nationstar committed errors in relation to the Loan:

a.   Failure to properly insure Borrower's property. Nationstar obtained insurance on behalf of itself and failed to add the Borrower as an additional insured. Thus Borrower is prevented from submitting a claim.

b.   Failure to properly or timely disburse funds to pay Borrower's existing insurance coverage. Servicer acknowledged that it received the new policy information from Borrower's insurance agent in April of 2020 with an expiration date of October 15, 2020. Servicer made no attempts to fund the policy until the actual deadline of October 15, 2020. On that date, Servicer called a toll free number instead of the local direct number provided to Servicer by the insurance agent on the notice of coverage. Servicer claims it was not able to reach Borrower's insurance agent and therefore failed to submit the payment. Servicer's negligence caused the lapse of coverage. <u>Borrower should be reimbursed for any additional costs caused by force-placed insurance.</u>

c.   Failure to properly respond to Borrower's NOE 2 which outlined the various items requested in Borrower's NOE 1.  Borrower needed the requested items to help resolve the errors caused by Servicer. Servicer claims that the Call Notes requested by Borrower are proprietary. Call Notes are records of conversations between Borrower and Servicer to which Borrower is entitled as the Mortgagor. Borrower needs to review the Call Notes because he attempted to address the insurance issue in the relevant time period which would be reflected in the Call Notes. Servicer also failed to provide various other items including copies of the mortgage statements, copies of escrow analysis, copies of statements for insurance charges, copies of all correspondence to Borrower, Servicing Notes which should reflect the attempts by Servicer to renew insurance coverage.

d.   Failure to timely provide Borrower with policy information needed to address the damage to Borrower's home.

e.     Failure to add Borrower as an additional insured on the force-placed insurance policy, preventing Borrower from submitting a claim.

See **Composite Exhibit 8**.

52.     Through RFI #3, Mr Hirtel again requested: copies of all insurance policies for the subject Loan since January 2020 and the items requested through RFI#1 and RFI #2 that Nationstar refused to send to date.

53.     Nationstar failed to acknowledge or respond to NOE#3/RFI#3.

54.     Mr. Hirtzel sent one last presuit notice/NOE#4 on October 21, 2022 after speaking with his insurance agent at Gateway and  learning that Nationstar had received notice of the lapse of coverage during the insurance loss period and had misrepresented the existence of a Homeowners Choice policy. Nationtstar also falsely alleged they did not have contact with Gateway despite the existence of emails confirming communication about the lapse of coverage. A true and correct copy of the presuit notice/NOE#4 is attached hereto as **Exhibit 9.**

55.     The presuit notice also contained a request pursuant to Florida Statute § 627.4137, which imposes liability on the recipient if they fail to provide proof of coverage.

56.     Nationstar received the presuit notice on October 24, 2022 but failed to acknowledge or respond to the same. A true and correct copy of the USPS mail receipt for the presuit notice is attached hereto as **Exhibit 10**.

57.     A reasonable investigation into the errors alleged through each of the notices of error would have required reviewing the customer service notes, the call notes, insurance records, escrow records, etc. and would have revealed that Nationstar failed to properly maintain insurance Mr. Hirtzel's Home from April 1, 2020 to October 15, 2020 as required per, *inter alia*, the LMA and RESPA.

58.     To date, Nationstar has failed to produce the following items requested through

the various requests for information and notices of error:

    a.  Copies of all Notice(s) of Transfer of Servicer for the above-referenced mortgage loan, if any. Specifically, when did Borrower's loan move to the regional office of the Servicer

    b.  Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan for the time period from the closing the the current date.

    c.  A detailed copy of your analyses of the escrow account of the mortgage from the time of closing to the present.

    d.  A copy of all insurance policies obtained by Servicer for the subject Property.

    e.  Call log and call notes/communication if not included in Request No. 1, above.

    f.  Copies of all correspondence whether sent via mail or electronically to Borrower since the closing  date.

    g.  A statement of any premiums and or fees assessed to the Borrowers' mortgage loan account for any insurance.

59.    Mr. Hirtzel still needs the requested information so he can determine how to submit an insurance claim and to resolve the mortgage servicing errors committed by Nationstar.

## IMPACT AND DAMAGES ON THE PLAINTIFF

60.    Due to Nationstar's actions, Mr. Hirtzel has been forced to live in a Home in a state of disrepair. This has greatly hindered his recovery as he now ambulates in a wheelchair after several hospitalizations during the relevant time period.

61.    The stress caused by Nationstar's actions has also exacerbated Mr. Hirtzel's hypertension and has caused increased stress and harm to Mr. Hirtzel.

62.    Nationstar's improper actions have further caused Mr. Hirtzel to suffer from other damages including:

    a.  Legal fees and expenses to submit disputes, requests for information and notices

of error to Nationstar in an attempt obtain information and seek Nationstar's compliance with state and federal laws and guidelines to which Mr. Hirtzel has not received a proper response or other redress ;

b.  Out of pocket expenses to mitigate the loss to his Home which would have otherwise been covered by the lapsed insurance policy;

c.  Increased charges for insurance due to the lapse of coverage;

d.  Increased cost of repairs due to inflation; and

e.  Severe emotional distress driven by Nationstar's actions including the exacerbation of his medical condition resulting in elevated blood pressure.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY NATIONSTAR

63.    Nationstar's actions are part of a pattern and practice of behavior in violation of Mr. Hirtzel's rights and in abdication and contravention of Nationstar's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

64.    As of the filing of this Complaint, consumers nationwide have lodged Six Thousand Seven Hundred Thirty NIne (6,739) consumer complaints with the CFPB against Nationstar, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed                     at                     the                     following                     link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

65.    Mr. Hirtzel has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Mr. Cooper engaged in similar conduct against other

borrowers. In particular, Mr. Hirtzel has reviewed the eleven (11) consumer complaints attached hereto and identified as ***Composite Exhibit 11***. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Nationstar has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

<u>**COUNT ONE**</u>
<u>**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) and (k)**</u>

**(Failure to properly respond to NOE #1, NOE#2, NOE#3, and NOE#4)**

66.     Mr. Hirtzel restates and incorporates all of the statements and allegations contained in paragraphs 1 through 67  in their entirety, as if fully rewritten herein.

67.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

68.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

69.     Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards the borrower's mortgage loan.

70.     12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

71.     A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

72.     12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

73.     12 U.S.C. § 2605(k)(1)(E) provides that a servicer of a federally related mortgage

shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

74.     NOE #1, NOE #2, NOE #3 and NOE #4 each constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

75.     Mr. Hirtzel sent NOE #1, NOE #2, NOE #3 and NOE #4 to Nationstar at the Designated Address and Nationstar received each such notice at such address. *See*, id.

76.     Nationstar failed to respond to NOE #1, NOE #2, NOE #3 and NOE #4 within thirty (30) business days of the receipt of such notice as required by 12 C.F.R. § 1024.35(e) which constitutes a clear violation of one (1) such violation for each of the foregoing notices to which Nationstar failed to timely respond in writing.

77.     Nationstar's actions are part of a pattern and practice of behavior in conscious disregard for Mr. Hirtzel' rights.

78.     Nationstar's conduct as pled, *supra*, is outrageous, wanton, willful, and shows a conscious disregard for Mr. Hirtzel's rights.

79.     As a result of Nationstar's actions, Nationstar is liable to Mr. Hirtzel for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

80.     Additionally, Mr. Hirtzel requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO**
**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(k)(1)(C) AND (E)**
**(Failure to reasonably investigate and properly respond to NOE #1, NOE #2, NOE #3 and**
**NOE #4)**

81.      Mr. Hirtzel restates and incorporates all of the statements and allegations
contained in paragraphs 1 through 67 in their entirety, as if fully rewritten herein.

82.      12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the
requirements of this section for any written notice from the borrower that asserts an error and
that includes the name of the borrower, information that enables the servicer to identify the
borrower's mortgage loan account, and the error the borrower believes has occurred."

83.      Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a)
provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by
an agent of the borrower.

84.      Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not
otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards to the
borrower's mortgage loan.

85.      12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of
error by either:

> (A)  Correcting the error or errors identified by the borrower and
> providing the borrower with a written notification of the
> correction, the effective date of the correction, and contact
> information, including a telephone number, for further
> assistance; or
> (B)  Conducting a reasonable investigation and providing the
> borrower with a written notification that includes a statement
> that the servicer has determined that no error occurred, a
> statement of the reason or reasons for this determination, a
> statement of the borrower's right to request documents relied

> upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

86.    12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

87.    12 U.S.C. § 2605(k)(1)(E) provides that a servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

88.    NOE #1, NOE #2, NOE #3 and NOE#4 constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

89.    Nationstar acknowledged receipt of NOE #1 and NOE #2 but failed to acknowledge receipt of NOE #3 and NOE #4.

90.    Mr. Hirtzel obtained proof of receipt from the USPS for each of the NOEs as referenced supra.

91.    Had Nationstar performed a reasonable investigation into the errors alleged through NOE #1, NOE #2, NOE #3 and NOE #4, Nationstar would have also acknowledged that it failed to properly insure Mr. Hirtzel's Home when the loss occurred.

92.     Nationstar's failure to respond to NOE #1 and NOE #2, and caused Mr. Hirtzel to incur legal fees and costs to have counsel prepare and send RFI #2, RFI #3, NOE #3 an NOE #4 to Nationstar, which would not have been necessary but for Nationstar's failure to properly respond to NOE #1 and NOE #2.

93.     Through NOE #2, Mr. Hirtzel realleged the errors alleged through NOE #1 and further alleged that Nationstar committed additional errors including:

a.   Failing to properly respond to RFI #1;

b.   Failing to properly respond to NOE #1;

c.   Failing to provide Escrow balance and Notices;

d.   Failing to respond to Payoff Request; and,

e.   Failing to provide statements.

*See **Exhibit 6***.

94.     Through NOE #3, Mr. Hirtzel realleged the errors alleged through NOE #1 and NOE #2 providing additional clarification and documentation to support their position that Nationstar's actions or inactions caused the delinquency, loan default and escrow and payment shortages and further alleged that Nationstar committed additional errors including:

a.   Failing to properly respond to RFI #2;

b.   Failing to properly respond to NOE #2;

c.   Failure to properly insure Borrower's property;

d.   Failure to properly or timely disburse funds to pay Borrower's existing insurance coverage;

e.   Failure to timely provide Borrower with policy information needed to address the damage to Borrower's home; and,

f.   Failure to add Borrower as an additional insured on the force-placed insurance policy, preventing Borrower from submitting a claim.

See **Exhibit 8**.

95.   Through NOE #4, Mr. Hirtzel alleged that Nationstar intentionally and fraudulently misrepresented the facts concerning his insurance coverage causing additional damages and delay in the rehabilitation of his Home which remains in a state of disrepair to date.

96.   Nationstar's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1, NOE #2, NOE #3 and NOE #4 constitute four (4) distinct violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and caused Mr. Hirtzel to suffer actual damages as detailed herein including costs of mailing, preparation costs, delinquency related charges and increased amounts due and owing. By and through NOE #1, NOE #2, NOE #3 and NOE#4 Mr. Hirtzel notified Nationstar of seven (7) separate violations.

## COUNT III
## VIOLATIONS OF 12 C.F.R. 1024.36(d) AND 12 U.S.C. 2605(c) AND (k)

### (Failure to timely and properly respond to RFI #1, RFI #2 and RFI #3)

97.   Mr. Hirtzel restates and incorporates all of the statements and allegations contained in paragraphs 1 through 67 in their entirety, as if fully rewritten herein.

98.   12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan

account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

99.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

100.    A servicer must respond to a request for information by:

(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

101.    Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:
(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

102.    A servicer does not have to provide information requested through a request for information "if the servicer *reasonably determines*" that the request seeks information that is duplicative of a prior request, seeks confidential, proprietary or privileged information, is

overbroad or unduly burdensome[5], or is untimely, and advises the borrower of their determination in writing. 12 C.F.R. § 1024.36(f) (emphasis added).

103.    "A servicer of a federally related mortgage shall not…fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

104.    Each of the RFIs are a request for information as defined by 12 C.F.R. § 1024.36(a) as they each contain Mr. Hirtzel's name, loan number, property address, and request information related to the Loan. *See Composite Exhibits 4, 6 and 8.*

105.    Mr. Hirtzel sent each of the RFIs to Nationstar at the Designated Address and Nationstar received each of the RFIs at the Designated Address. *See*, *id*.

106.    Through RFI #1, Mr. Hirtzel requested that Nationstar provide information related to the Loan and Nationstar's servicing thereof including an itemized payoff and a transactional history, copies of all Notice(s) of Transfer of Servicer, copies of any and all servicing notes, detailed copy of your analyses of the escrow account, a copy of all insurance policies obtained by Servicer for the subject Property, call log and call notes/communication, a copy of the HUD-1 statement,  copies of all correspondence whether sent via mail or electronically to Borrower, and a statement of any premiums and or fees assessed to the Borrowers' mortgage loan account for any insurance.

*See  Composite Exhibit  4.*

---

[5] "To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information." 12 C.F.R. § 1024.36(f)(1)(iv).

107.    Nationstar failed to provide a response to RFI#1.

108.    Nationstar was obligated to provide the information pursuant to 12 C.F.R. § 1024.36(d)(2)(i).

109.    Nationstar's actions in failing to properly respond to RFI #1 are in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E).

110.    Nationstar's actions in failing to timely and accurately respond to RFI #1 caused Mr. Hirtzel to suffer actual damages as further outlined, *supra*, specifically including legal fees and costs to have counsel prepare and send RFI #2, RFI #3, NOE #2 and NOE #3 to Nationstar, which would not have been necessary but for Nationstar's failure to properly respond to RFI #1.

111.    Through RFI #2, Mr. Hirtzel requested that Nationstar provide an Itemized Reinstatement Quote and a Payoff Quote and the item requested in RFI#1. *See **Exhibit  6**.

112.    Nationstar received RFI #2 at the Designated Address on December 10, 2021.

113.    Nationstar was required to provide the Payoff and Reinstatement Quote within seven business days to Mr. Hirtzel in response to RFI #2.

114.    Nationstar failed to send a timely or accurate Reinstatement Quote or Payoff Quote.

115.    Nationstar was required to provide the additional requested items within 30 business days.

116.    Nationtar belatedly provided a response to Mr. Hirtzel on February 15, 2022 wherein Nationtar alleged it had previously responded.

117.    Nationstar failed to provide many of the requested items including: copies of all Notice(s) of Transfer of Servicer, copies of any and all servicing notes, a detailed copy of analyses of the escrow account of the mortgage, a copy of all insurance policies for the subject Property, call log and call notes/communication,   copies of all correspondence whether sent via mail or electronically to Borrower and a statement of any premiums and or fees assessed to the Borrowers' mortgage loan account for any insurance.

118.    Nationstar's failure to provide the requested items constitutes an additional error. Nationstar's actions are part of a pattern and practice of behavior in conscious disregard for Mr. Hirtzel' rights and Nationstar's obligations under RESPA and Regulation X.

119.    Nationstar's conduct as pleaded, *supra*, shows a conscious disregard for Mr. Hirtzel' rights and Nationstar's obligations under RESPA and Regulation X.

120.    In an attempt to once more resolve the alleged deficiency to mitigate the damages caused by Nationstar, Mr. Hirtzel sent RFI #3.

121.    Nationstar failed to respond to RFI #3.

122.    Mr. Hirtzel needed this information to determine what was the correct amount needed to bring the loan current since Nationstar failed to provide an accurate reinstatement quote and failed to provide an itemization for the servicer advances allegedly owed.

123.    As a result of Nationstar's actions, Nationstar is liable to Mr. Hirtzel for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

124.    Additionally, Mr. Hirtzel requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Mr. Hirtzel respectfully requests that this Court enter an order granting Judgment against Defendant Nationstar Bank, N.A. for the following:

A.      For actual damages in an amount to be determined at trial;

B.      For statutory damages of Two Thousand Dollars ($2,000.00) for each of the eighteen (18) violations of RESPA contained in Count One through Three for a total of Thirty-six Thousand Dollars ($36,000.00);

C.      For reasonable attorneys' fees and costs; and,

D.      For all other relief this Court may deem just and proper.

Dated:  April 24, 2023

Respectfully submitted,

/s/ Jessica L. Kerr, Esq.
Jessica L. Kerr, Esquire
*Co-Counsel for Plaintiff*
Florida Bar no. 92810
**THE ADVOCACY GROUP**
111 NE 1st Street, 8th Floor #8517
Miami, FL 33132
Telephone: (954) 282-1858
Email: service@advocacypa.com
Email: jkerr@advocacypa.com

## JURY DEMAND

Plaintiff Byron Hirtzel hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Jessica L. Kerr, Esq.
Jessica L. Kerr, Esquire
Florida Bar no. 92810